THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| Stephen Kyle C,<br><br>                    Plaintiff,<br>v.<br><br>Frank Bisignano,<br>Commissioner of Social Security,<br><br>                    Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 2:24-cv-0420-RJS-DBP<br><br>Chief District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

Plaintiff Stephen C.[1] seeks judicial review of the decision of the Commissioner of Social Security (Commissioner), denying his claim for disability and disability insurance benefits under Title II of the Social Security Act (Act).[2] After careful review of the record including the parties' briefs,[3] the undersigned finds the Commissioner's decision legally sound and supported by substantial evidence. Accordingly, for the reasons set forth herein, the undersigned recommends the Commissioner's decision be affirmed and Plaintiff's Motion for Review of Agency Action be denied.[4]

## BACKGROUND

Plaintiff applied for disability insurance benefits in June 2021 alleging disability beginning November 16, 2020.[5] An Administrative Law Judge (ALJ) issued a decision denying

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in judicial opinions in certain cases, including social security cases, Plaintiff is referred to by first name and last initial only. Privacy concerns are inherent in many of the Federal Rules. *See*, Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. 49.1.

[2] 42 U.S.C. § 405(g).

[3] *See* Plaintiff's Motion for Review of Agency Action, ECF No. 15; Response, ECF No. 20.

[4] ECF No. 15.

[5] ECF No. 7-2, Certified Administrative Transcript (Tr 17).

benefits in November 2023.[6] This decision became the Commissioner's final decision when the agency's Appeals Council denied Plaintiff's request for review.[7]

In rendering a decision, the ALJ followed the five-step sequential evaluation process for disability claims.[8] At step two, the ALJ found Plaintiff had several severe impairments—hydrocephalus and traumatic brain injury, status post VP shunt placement, degenerative disc disease of the lumbar and cervical spines, neurocognitive disorder, and major depressive disorder.[9] Next, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing.[10]

The ALJ then considered the entire record and found Plaintiff had the residual functional capacity (RFC) to perform a limited range of medium work with the following restrictions:

> He is limited to frequent climbing of ramps, stairs, and ladders up to six feet tall; he can never climb ladders over six-feet tall, ropes, and scaffolds; he is limited to frequent stooping, crouching, and crawling; he is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way

---

[6] Tr 17-41.

[7] Tr. 1, 14-50; 20 C.F. R. § 4.4.981

[8] The Tenth Circuit described the five-step evaluation process as follows:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy.

*Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations and internal quotation marks omitted).

[9] Tr. 20.

[10] Tr. 21.

of change in job process from day to day, and jobs with multistep tasks, easily resumed after momentary distraction.[11]

After finding at step four that Plaintiff could not perform his past work as a sales manager or sales director, the ALJ found at step five, that Plaintiff could perform other work existing in significant numbers in the national economy.[12] Based on Plaintiff's RFC and the testimony of a Vocational Expert (VE), the ALJ found Plaintiff could perform work as a kitchen helper, dining room attendant, and floor waxer.[13] Thus, the ALJ found Plaintiff was not disabled from the alleged onset date in November 2020, through the date of the decision, November 15, 2023.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision. The court's review is limited to a determination of whether substantial evidence in the record, taken as a whole, supports the factual findings and whether the correct legal standards were applied.[14] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[15]

An Administrative Law Judge's ("ALJ") factual findings are "conclusive if supported by substantial evidence."[16] Although the threshold for substantial evidence is "not high"; it is "more

---

[11] Tr. 25. *See* 20 C.F.R. §§ 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."); 20 C.F.R. 404.1567(c) (defining medium work).

[12] Tr. 39-40.

[13] Tr. 40.

[14] *See* 42 U.S.C. § 405(g); *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

[15] *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

[16] *Biestek v. Berryhill,* 587 U.S. 97, 102, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019) (internal quotation marks omitted).

than a mere scintilla."[17] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[19]

In considering the administrative record, the court may neither "reweigh the evidence [n]or substitute [its] judgment for [that of] the [ALJ's]."[20] As a result, where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[21]

## DISCUSSION

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[22] An individual is considered disabled only if their impairments are so severe, they cannot perform her past work or "any other kind of substantial gainful work which exists in the national economy."[23]

On appeal, Plaintiff asserts the main issue is the same as in almost every case for benefits under the Act, "whether the claimant, considering the claimant's physical and/or mental impairments and various vocational factors, has the … RFC to work successfully in any jobs

---

[17] *Josue R. v. Kijakazi,* 2023 U.S. Dist. LEXIS 30662, at *6 (C.D. Cali Feb. 23, 2023) (citing *Biestek,* 587 U.S. at 102).

[18] *Biestek*, 587 U.S. at 103 (citation omitted).

[19] *Lax v. Astrue,* 489 F. 3d 1080, 1084 (10th Cir. 2005).

[20] *Hendron*, 767 F.3d at 954 (citation omitted).

[21] *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990).

[22] 42 U.S.C. § 423(d)(1)(A).

[23] *Id.* § 423(d)(2)(A).

which exits in significant numbers in the national economy."[24] To begin, Plaintiff asserts several problems with the Social Security Agency's methodology in evaluating a "claimant's physical or mental functional capacity to work."[25] For example, a claimant's self-reporting of daily activities "may or may not translate"[26] into the ability to work. And the Agency placing "great weight on the content of a claimant's medical records (as opposed to functional capacity)"[27] is problematic. The court does not consider Plaintiff's systematic or philosophical arguments as they go toward the Agency's inherent review process, which is something beyond the current appeal, and is a matter better left to the discretion of the Agency or Congress.

Setting these broad systematic arguments aside, the court turns to Plaintiff's specific claims of error in this case. Generally, these claims of error revolve around first, the ALJ erred by not adequately developing the record, "especially as to the nature and limiting effects of all of his physical and metal impairments on his ability to work."[28] This includes an alleged failure to properly evaluate Plaintiff's RFC by not adequately considering all the physical and mental impairments in the record. Second, Plaintiff contends the ALJ erred by failing to properly evaluate his testimony, the VE's testimony, and other evidence in the record "on the issue of [Plaintiff's] limitations in reaching and maintaining satisfactory levels of attendance, productivity and sustainability …."[29] Third, Plaintiff takes issue with the ALJ's failure to include the proper limitations in the hypothetical questions set forth to the VE.[30] In essence, Plaintiff

---

[24] Plaintiff's Motion for Review of Agency Action at 1, ECF No. 42.

[25] *Id.* at 3.

[26] *Id.*

[27] *Id.* at 2.

[28] *Id.* at 5.

[29] *Id.*

[30] *Id.* at 7.

takes issue with the ALJ's consideration of his "difficulties in maintaining steady attendance, staying on task during and working for an entire shift, and performing at satisfactory levels of productivity, on a sustained basis, in competitive employment …."[31]

### I.   The ALJ did not err in evaluating the medical evidence

Under the regulations the ALJ may "not defer or give specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."[32] Instead, the ALJ shall assesses the persuasiveness of the medical opinion evidence based on the following factors: (1) supportability (the objective medical evidence and supporting explanations presented by the medical source); (2) the consistency of the opinion with other medical and nonmedical sources; (3) the relationship with the claimant (including its length, frequency, purpose, and extent—and whether it was an examining relations); (4) any specialization; and (5) any other relevant factors.[33] The most important factors are supportability and consistency and the ALJ *must* explain how he evaluated those two factors.[34] "Supportability" asks how closely connected the relevant objective medical evidence is to the supporting explanations offered by a medical source

---

[31] *Id*. at 7-8.

[32] 20 C.F.R. § 416.920c(a); § 404.1520c(a). *see also Staheli v. Comm'r SSA*, 84 F.4th 901, 905-906 (10th Cir. 2023) (internal citations omitted) ("Statements on issues reserved to the Commissioner, including on the ultimate issue of whether the claimant is or is not disabled or able to work, are evidence that is neither valuable nor persuasive and the ALJ is not required to provide any analysis about how [he] considered such evidence in [his] determination or decision.")

[33] 20 C.F.R. § 404.1520c(b), (c)(1)-(5).

[34] 20 C.F.R. § 404.1520c(b)(2); § 416.920c(b)(2). The ALJ is only required to discuss the remaining factors if there are "two or more medical opinions . . . about the same issue [that] are equally well-supported and consistent with the record but are not exactly the same." 20 C.F.R. § 404.1520c(b)(2)-(3); 20 C.F.R. § 416.920c(b)(2)-(3).

and 'consistency' compares a medical opinion or prior administrative findings to the evidence."[35]

An ALJ need not discuss every piece of evidence, as long as the record demonstrates "that the ALJ considered all of the evidence."[36] Further, although the regulations do not specifically address the degree to which the ALJ must discuss supportability and consistency, at a minimum the ALJ is required to provide "enough detail such that the [c]ourt 'can follow the [ALJ's] reasoning' and determine whether 'the correct legal standards have been applied.'"[37]

The ALJ specifically considered a number of records in making his findings. This included multiple trips to the Emergency Room,[38] struggles with the VP shunt placed in Plaintiff and the resulting dizziness and nausea,[39] and records of Plaintiff's ability to perform exercises at the gym.[40] The ALJ specifically noted the findings of Dr. Trung Nguyen,[41] Dr. Jon Pertab,[42] Dr. John Hardy,[43] and Plaintiff's massage therapist, April Michelsen.[44] In considering the persuasiveness of these opinions the ALJ weighed their supportability and consistency.[45]

---

[35] *Ashley S. v. Kijakazi,* 2023 WL 8004619, at *4 (D. Utah Nov. 17, 2023) (citing 20 C.F.R § 416.920c(c)(1)-(2); 20 C.F.R. § 404.1520c(c)(1)-(2)).

[36] *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996).

[37] *Smallwood v. Kijakazi,* 2022 WL 4598499, at *3 (D.N.M. Sept. 30, 2022) (quoting *Keyes-Zachary,* 695 F.3d at 1166).

[38] Tr. 27-29.

[39] Tr. 30 (noting the claimant had his VP shunt adjusted to address nausea, fatigue, and dizziness).

[40] Tr. 29 (noting Claimant was doing 500 sit-ups and a leg circuit at the gym). *See* 20 C.F.R. § 1529(c)(3)(i) (noting a claimant's "daily activities" are relevant to an evaluation of symptoms).

[41] Tr. 29.

[42] Tr. 32.

[43] Tr. 33.

[44] Tr. 36.

[45] *See, e.g.,* Tr. 37 noting Dr. Hardy's examination findings were "somewhat inconsistent with the neuropsychological evaluations of Dr. Pertab."

Ultimately, the ALJ found there "is no persuasive medical opinion evidence that fully supports the claimant's statements regarding the intensity, persistence, and limiting effects of his impairments or suggest greater limitations…."[46] The court finds the ALJ's evaluation of the medical evidence was proper and there is substantial evidence to support his findings.

## II. The ALJ properly considered the evidence in the record

The ALJ specifically considered the testimony of Plaintiff's wife Tonya C.[47] As noted above, the ALJ measured complaints of Plaintiff when he visited the Emergency Room multiple times. The ALJ also considered Plaintiff's own testimony and prior administrative medical findings as part of the RFC assessment.[48] Finally, the ALJ provided a longitudinal evaluation of Plaintiff's symptoms, medical visits, and the problems he tried to resolve with getting a more adjustable VP shunt.

Case law is clear, that "rearguing the weight of the evidence is an unavailing tactic on appeal because it is not this court's role to reweigh the evidence before the ALJ."[49] In essence this argument can be boiled down to Plaintiff rearguing the weight of the evidence. There is nothing before the court indicating the ALJ failed to properly consider the evidence in the record. Plaintiff may disagree with the weight given to certain evidence, but those arguments are

---

[46] Tr. 35.

[47] Tr. 26.

[48] Tr. 35-38.

[49] *Val Skye P. v. Kijakazi*, 2023 WL 3007941, at *3 (D. Utah Apr. 18, 2023). *See also Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (noting that a court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its weight" (emphasis omitted)); *Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (alteration in original) (citation modified)).

rejected as unavailing and contrary to the vast amount of case law rejecting those type of arguments.

### III. The ALJ did not err in the hypothetical questions to the VE

Plaintiff challenges the ALJ's hypothetical questions to the VE. An ALJ's hypothetical questions need only include those limitations an ALJ included in the RFC finding.[50] Here, the ALJ "had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied."[51]

The ALJ asked the VE a series of hypotheticals. The first of which did not preclude Plaintiff's past relevant work.[52] The ALJ then went on to add further restrictions to the hypotheticals including reducing the exertional level to light, and then sedentary work. Next, the ALJ added additional mental limitations, which would basically require "unskilled work only".[53] Although Plaintiff's prior work would be precluded, the VE testified that there were other jobs available. Finally, the ALJ proceeded to require additional rest breaks and increased absenteeism.[54] Although these additions "would preclude all competitive employment",[55] ultimately, the ALJ determined these limitations were inapplicable here. The record supports the ALJ's exclusion of these last limitations from the final decision. The ALJ did not have to credit

---

[50] *Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) ("Because the ALJ's hypothetical included all of the limitations he properly determined claimant to have, there was no error."); *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

[51] *Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016).

[52] Tr. 89-90.

[53] Tr. 91.

[54] Tr. 92.

[55] Tr. 93.

Plaintiff's preferred hypotheticals, especially where they are not supported by the record.[56] Thus, there is no error in the ALJ's hypotheticals.

## RECOMMENDATION

Based upon the forgoing, the court finds there is substantial evidence in the record to support the ALJ's decision and the correct legal standards were applied. The undersigned therefore RECOMMENDS that Plaintiff's Motion for Review of Agency Action[57] be DENIED and the Commissioner's decision be AFFIRMED.

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 27 August 2025.

_____
Dustin B. Pead
United States Magistrate Judge

---

[56] *James M. v. Kijakazi*, 2023 WL 392878, at *6 (D. Utah Jan. 25, 2023) ("The ALJ did not have to credit Plaintiff's claims or his hypotheticals.").

[57] ECF No. 18.